IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

FILED
U.S. DISTRICT COURT
OF WYOMING

2015 OCT 15  AM 11 03

STEPHAN HARRIS, CLERK
CHEYENNE

| | |
|---|---|
| LINDA MARKER,<br><br>Plaintiff,<br><br>v.<br><br>JACKSON HEWITT, INC., and<br>MATT BROWN,<br><br>Defendants. | Case No. 14–CV–104–ABJ |

## OPINION AND ORDER GRANTING IN PART, DENYING IN PART, DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

The defendants' *Motion for Partial Summary Judgment* (Doc. No. 37), the plaintiff's opposition (Doc. No. 41), and the defendants' reply (Doc. No. 44) are before the Court. After reviewing the parties' submissions, the applicable law, and being fully advised, the Court finds that the defendants' *Motion for Partial Summary Judgment* (Doc. No. 37) should be **GRANTED IN PART** and **DENIED IN PART** for the reasons stated below.

This case is about an employee injured while setting up satellite tax preparation locations for Jackson Hewitt and the confusion thereafter regarding who would ultimately pay for her injuries. First, the Court will give a brief factual background, discussing before, during, and after the injury. Next, Court will present the standard of review, followed by an analysis of the law and facts as to each count affected by this motion for partial summary judgment. Finally, the Court will conclude by listing the counts not remaining and those remaining for trial.

## BACKGROUND

*Leading up to the Plaintiff's Injury*

Linda Marker, the plaintiff, began working as a tax preparer for Jackson Hewitt, Incorporated, one of two defendants in this case, in 2004. Jackson Hewitt eventually promoted Marker to Seasonal Area Assistant Manager. In this new position, Marker travelled around Wyoming and set up tax preparation kiosks for the tax season. On November 8, 2012, Jackson Hewitt appointed Matt Brown, the individual defendant, as the Senior Area Manager, making him Marker's direct supervisor.

As happens each day at worksites everywhere, the new supervisor and supervisee did not cooperate well. Two months into this working relationship, in mid-January, Marker and Brown met in Casper to discuss Marker's work performance. Brown told Marker that her performance was lacking. During the discussion of her lackluster performance, Marker blamed her unsatisfactory performance on medical issues with her back. Brown asked Marker whether she needed assistance unloading tax kiosk materials, and Brown contends that Marker stated she did not need such assistance. After the cold mid-January meeting, Marker and Brown spent hours in a car together quality checking various Jackson Hewitt locations in Wyoming. After a few days and while in Cody, Wyoming, Brown decided the team should split up. From Cody, Brown drove to Colorado and Marker drove to Evanston, Wyoming in a rental sport-utility vehicle. Marker—with the help of another Jackson Hewitt employee, Roberta Makinen, and Makinen's husband—unloaded and built the kiosk in Evanston. Marker and Makinen would head to Rock Springs, Wyoming the very next day.

*Marker's Injury and Thereafter*

The next day, January 19, 2013, Marker travelled with Makinen to the Jackson Hewitt kiosk at Walmart in Rock Springs. When they arrived, the pair unloaded the setup materials without requesting help from anyone else. The pair attempted to remove an eighty pound box containing an unassembled podium from the sport-utility vehicle. Each one took a side, and they attempted to place the box into a shopping cart. The box slipped from Marker's grasp, she lost her footing, and—as she fell—the box fell with her, landing directly on her. Marker had immediate back pain, but waited until the next day to visit the hospital. Doctors performed various imaging tests on Marker and discovered injuries to her lumbar spine and neck. A doctor told Marker she could not return to work until she was cleared by a medical professional.

Marker worried about who would be paying her medical bills. Marker claims that she understood her injuries to be covered by Wyoming's workers' compensation insurance. Apparently, Jackson Hewitt understood the same, because its benefits manager, Edgar Oteiza, submitted Marker's Report of Injury to the Wyoming Workers' Safety and Compensation Division ("Division") on January 23, 2013. Doc. No. 38-2, pp. 19–20. The Division indicated to Oteiza that Jackson Hewitt previously declined coverage offered by the Division. Jackson Hewitt informed Marker that it would submit Marker's injury claim to its third party insurer, Zurich Insurance. Zurich Insurance also denied coverage for Marker's injuries.

Dispute exists as to Marker's cooperation in submitting her medical bills to the defendants. Marker blames the defendants for ostracizing her from the company and keeping her out of the loop. The defendants blame Marker for not replying to numerous emails.

During February and March, the intermittent communication between the parties continued. The defendants sent a few emails requesting medical bills from Marker, but to no

avail. Marker contends she did not reply for many reasons, including her concern with Brown's actions toward her before and after the injury. She contends that Brown generally harassed her and treated her poorly throughout Brown's time at Jackson Hewitt.[1] Soon after the injury, Brown requested Marker return all company property and told other employees not to talk to her. Brown contends that he wanted to keep her away from work so she could heal faster. Marker argues that Brown was trying to force her out as quickly as possible. In addition, Brown broke the lock on Marker's employee mailbox and put most her personal items outside of the Jackson Hewitt office in Casper. Brown told Marker to come pick them up. Marker did not pick up the items; she claims the City of Casper threatened to prosecute her for littering. Also, Marker contends that she requested—with no reply—a letter confirming Jackson Hewitt did not have insurance coverage so that her husband's insurance company would pay her bills. Marker contends that the defendants acted intentionally to frustrate and intimidate her.

On May 21, 2014, Marker filed her *Complaint* against the defendants, thereby commencing this action. Marker claimed that the defendants (1) negligently failed to provide a safe workplace; (2) owed her redress under the doctrine of promissory estoppel; (3) intentionally inflicted emotional distress; and (4) failed to cover her under state workers' compensation insurance. Marker also requested punitive damages. The defendants moved for summary judgment on all claims except for negligently failing to provide a safe workplace.

## STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute

---

[1] This includes a lack of cooperation when it came to her expense reports and demands for reimbursement.

of fact is genuine if a reasonable juror could resolve the disputed fact in favor of either side. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is material if under the substantive law it is essential to the proper disposition of the claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). When the Court considers the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn" in the non-movant's favor. *Anderson*, 477 U.S. at 255.

The party moving for summary judgment has the burden of establishing the nonexistence of a genuine dispute of material fact. *Lynch v. Barrett*, 703 F.3d 1153, 1158 (10th Cir. 2013). The moving party can satisfy this burden by either (1) offering affirmative evidence that negates an essential element of the nonmoving party's claim, or (2) demonstrating that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. *See* Fed. R. Civ. P. 56(c)(1)(A)–(B).

Once the moving party satisfies this initial burden, the nonmoving party must support its contention that a genuine dispute of material fact exists either by (1) citing to particular materials in the record, or (2) showing that the materials cited by the moving party do not establish the absence of a genuine dispute. *See id.* The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, to survive a summary judgment motion, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Further, when opposing summary judgment, the nonmoving party cannot rest on allegations or denials in the pleadings but must set forth

specific facts showing that there is a genuine dispute of material fact for trial. *See Travis v. Park City Mun. Corp.*, 565 F.3d 1252, 1258 (10th Cir. 2009).

When considering a motion for summary judgment, the court's role is not to weigh the evidence and decide the truth of the matter, but rather to determine whether a genuine dispute of material fact exists for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the fact-finder, not the court. *Id.* at 255.

## DISCUSSION

### I. The defendants are entitled to summary judgment on Marker's claim for promissory estoppel because no disputed issues of material fact exist.

In her *Complaint*, Marker claims that the defendants promised her that they would submit her medical expenses for payment by the Division and Zurich Insurance, and she relied on that promise to her detriment. After her claims were submitted, it was determined that Marker's injuries were not covered by either workers' compensation or Zurich Insurance. The defendants argue that there is no dispute of material fact because Marker could not have reasonably relied on the promises made by the defendants and she did not rely to her detriment. Marker contends that whether she did reasonably rely on the defendants' promise is a question of fact for the jury.

Promissory estoppel involves three elements.

> (1) the existence of a clear and definite promise which the promisor should reasonably expect to induce action by the promisee; (2) proof that the promisee acted to its detriment in reasonable reliance on the promise; and (3) a finding that injustice can be avoided only if the court enforces the promise.

*Parkhurst v. Boykin*, 2004 WY 90, ¶ 21, 94 P.3d 450, 460 (Wyo. 2004) quoting *City of Powell v. Busboom*, 2002 WY 58, ¶ 8, 44 P.3d 63, 66 (Wyo. 2002). Promissory estoppel can be properly dismissed on summary judgment. *See Parkhurst*, ¶ 22.

The first element is not in dispute. The defendants contend that they promised they would pay for her injuries, if workers' compensation or private insurance covered the injuries. Marker stated that the defendants promised all her injuries would be paid for, whether by workers' compensation, their insurance, or their own money. Doc. No. 38-3, p. 5. According to Marker, Leah Corbett—the Senior Director of Human Resources for Jackson Hewitt—promised her "it would all be taken care of...." *Id.* Marker demonstrates a disputed issue of fact as to the existence of a clear and definite promise, but does not provide evidence to create a dispute as to whether the defendants should reasonably expect to induce action by Marker. The defendants could have expected Marker to accumulate medical expenses but not in reliance on the alleged promise. Marker would have sought medical treatment for her injuries, whether she was covered or not. Doc. No. 38-3, p. 9. If the defendants had promised Marker they would pay specifically for an expense like an experimental back surgery, the defendants could have reasonably expected Marker to rely on their payment for that specific expense. Reasonable jurors could not find that the defendants reasonably expected Marker to rely on their promise.

The second element of promissory estoppel—proof that the promisee did reasonably rely to her detriment—is not in dispute. The defendants argue that it was not reasonable for Marker to rely on the promise of coverage when she knew that coverage did not exist. *See* Doc. 41, p. 159–60 (in her deposition, Marker stated that one of the doctors told her she did not have coverage). They also claim Marker would have received the medical treatment anyway. Marker contends that—given the continued assurances from the defendants—she was convinced that they would pay for all her injuries. Doc. No. 41, p. 159–60. Marker stated that multiple people working for Jackson Hewitt assured her that her expenses would be covered. *Id.* Marker asserts that she and her husband used their home as collateral to acquire a loan to pay her medical bills. *See* Doc. No.

7

41, p. 50 (supporting documentation of the loan that the Markers financed). However, Marker's husband maintained medical insurance for medical bills and charges. Doc. No. 1, p. 5.

The evidence presented by Marker is insufficient for a reasonable juror to possibly conclude that she reasonably relied to her detriment. Marker presents evidence of medical bills, but she would have paid those anyway. Doc. No. 38-3, p. 9. Marker presents evidence of the home equity loan, but the loan was issued after she found out she was not covered by workers' compensation and Zurich Insurance in February, 2013. *See* Doc. No. 41, p. 50 (loan approved on November 22, 2013); Doc. No. 38-2, p. 19–20; (the defendants sent the report of injury to the Division for a determination of coverage); WYO. STAT. ANN. § 27-14-601(a) (requiring the Division to give notice to the employee of denial, which occurred in February of 2013). The best illustration of the lack of dispute as to this element presents itself in Marker's deposition when questioned on the issue.

> [The defendants' counsel:] How would that have changed things, whether Jackson Hewitt had Workers' Compensation or not?
>
> [Marker:] What do you mean changed things?
>
> [The defendants' counsel:] Would you have acted any differently following your injury?
>
> [Marker:] I guess I don't understand what you're asking me. Acting differently in what way? What do you mean?
>
> [The defendants' counsel:] Would you have been more proactive following up with medical bills, for example.
>
> [Marker:] I didn't know they didn't have Workers' Comp until after my injury and everything was going on.
>
> [The defendants' counsel:] Okay.
>
> [Marker:] So no, I don't believe I would have acted any differently, other than— you know, I mean, somebody has to pay them and my husband—my husband's insurance.

> [The defendants' counsel:] But you would not have not sought medical treatment, right?
>
> [Marker:] Right. Right.

Doc. No. 38-3, p. 9. This dialogue demonstrates that "action or forbearance of a definite and substantial character," was not present. *Parkhurst*, ¶ 21, quoting *Loya v. Wyoming Partners of Jackson Hole, Inc.*, 2001 WY 124, ¶ 22, 35 P.3d 1246, 1254 (Wyo. 2001). The statements made in Marker's deposition and other evidence in the record is not enough for any reasonable juror to conclude that Marker reasonably relied to her detriment. No reasonable juror could find that Marker somehow relied to her detriment in this case, even viewing the evidence in a light most favorable to Marker. Because no disputed issue of material fact exists with regard to the first two elements of promissory estoppel, Marker's claim for promissory estoppel does not survive for trial.

## II. The defendants are entitled to summary judgment on Marker's claim for intentional infliction of emotional distress because no dispute of material fact exists.

In her *Complaint*, Marker claims that the defendants intentionally caused her severe emotional distress by acting outrageously in how they treated her and fired her. The defendants contend that, as a matter of law, Marker's claims of "outrageous conduct" and "severe emotional distress" are not sufficient to survive summary judgment. Marker contends that a disputed issue of material fact exists as to her claim for intentional infliction of emotional distress. Intentional infliction of emotional distress occurs when a defendant, through extreme and outrageous conduct, intentionally or recklessly causes severe emotional distress. *Worley v. Wyoming Bottling Co.*, 1 P.3d 615, 627–28 (Wyo. 2000). First, this Court—as a gatekeeper—must examine whether reasonable people may differ on the issue of whether Brown's conduct was

extreme and outrageous. *Id.* at 628. Certain conduct in employment situations may be sufficient to survive summary judgment, but discharge alone generally is not enough. *Id.* The *Worley* Court looked to the Restatement Second of Torts, Section 46, Comment d to better define "extreme and outrageous" conduct, quoting from that comment.

> *Extreme and outrageous conduct.* The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"
>
> The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam.

*Id.* The Court assesses extreme and outrageous conduct in this case as follows.

Marker claims that Brown and Jackson Hewitt acted with extreme and outrageous conduct on multiple occasions: (1) not dealing openly, honestly, and fairly with Marker's requests for information on her claim; (2) inferring that her damages were invalid and attempting to bully witnesses; (3) requesting company property back so quickly; (4) ordering employees not to talk to her; (5) falsifying her name in finishing peoples' tax returns; and (6) opening her locked mailbox and tossing her personal items outside the office, which led to threatened prosecution against her. Taking the affidavits and depositions filed as exhibits to Marker's

response as true, it seems Brown lacks compassion and respect for the people he manages. The affidavits provided by Marker outline Brown's serious managerial issues. Even though he treated other employees poorly, the only evidence relevant to this case on extreme and outrageous conduct is evidence specifically pertaining to Marker and her claims. None of these alone would cause a reasonable person to exclaim, "outrageous!" *See id.* But the Court must consider all these allegations as true and together as a whole on summary judgment.

In *Worley*, the conduct that was extreme and outrageous enough was the employer repeatedly threatening termination, demanding impossibly large increases in sales, withholding a periodic wage increase, humiliating Worley for minor infractions, and providing Worley an ultimatum or else he would be fired. *Worley*, 1 P.3d at 629. The *Worley* Court—acknowledging that these facts were very close to summary judgment—used this list of actions plus the employer's position of power to find the conduct outrageous enough to preclude summary judgment. *Id.* at 630. In *Kanzler v. Renner*, the outrageous and extreme conduct involved repeated and pervasive sexual harassment. 937 P.2d 1337, 1342–43 (Wyo. 1997).

Even viewing the evidence in the light most favorable to Marker, the Court finds the conduct alleged falls short of the outrageousness needed to survive summary judgment. Even cumulatively, these facts establish that Brown was occasionally inconsiderate and unkind to Marker, and Brown was not eloquent in dealing with her during a difficult time. But the record contains no evidence of consistent abuse of power, patterns of harassment, or sexual and/or physical contact, involving Marker and Brown. No reasonable juror—accepting Marker's allegations as true—could conclude Brown's conduct was extreme and outrageous. Solely being an inconsiderate, unkind boss is far from actionable.

In addition, Marker does not pass the Court's gatekeeping on the issue of severe emotional distress. To survive summary judgment, the severe emotional distress must be exactly that: severe.

> Appellant contends that summary judgment should not have been granted on his claim for intentional infliction of emotional harm, because there was a genuine issue of material fact as to whether his suffering was severe. We disagree. Comment "j" of § 46 of the Restatement, Second, Torts states:
>
>> "Severe emotional distress. The rule stated in this Section applies only where the emotional distress has in fact resulted, and where it is severe. Emotional distress passes under various names, such as mental suffering, mental anguish, mental or nervous shock, or the like. It includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. It is only where it is extreme that the liability arises. Complete emotional tranquility is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people. The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and the duration of the distress are factors to be considered in determining its severity. Severe distress must be proved; but in many cases the extreme and outrageous character of the defendant's conduct is in itself important evidence that the distress has existed. * * *
>>
>> "The distress must be reasonable and justified under the circumstances, and there is no liability where the plaintiff has suffered exaggerated and unreasonable emotional distress, unless it results from a peculiar susceptibility to such distress of which the actor has knowledge. * * *
>>
>> "It is for the court to determine whether on the evidence severe emotional distress can be found; it is for the jury to determine whether, on the evidence, it has in fact existed." (Emphasis added.)

*Leithead v. Am. Colloid Co.*, 721 P.2d 1059, 1066–67 (Wyo. 1986). In *Leithead*, the court affirmed the trial court's order of summary judgment on the claim for intentional infliction of emotional distress. *See id.* at 1067–68 (explaining that an employee's worrying about paying

bills, finding a job, and people talking about him or her, without seeking psychological help is not severe emotional distress).

Marker's response does not cite admissible evidence in response to the defendants' charge that severe emotional distress was not present. Working through the numerous affidavits and portions of depositions provided by Marker, the Court cannot find the extreme needle in the emotional distress haystack. Doc. No. 41. In fact, the defendants provided the only evidence on the issue of "severe emotional distress." In Marker's deposition, she described her severe emotional distress in the following way.

> [Marker:] [F]or one, I can't work. I mean, I lost my job. My normal activities, I can't do that. Mentally, driving back by my place of employment, he taunted me, he called me, he would . . . he threw all my stuff, all my belongings, outside. . . .
>
> [The defendants' counsel:] Are you currently seeing a doctor for your depression?
>
> [Marker:] Yes, the same doctors that I see, Dr, Tooke, Dr. Pettine.
>
> [The defendants' counsel:] When did you first consult with Dr. Tooke for your depression?
>
> [Marker:] I don't recall, I really don't. Through all this, I'm sure he started me on it immediately, you know. I mean, I had a heck of an ordeal, . . .
>
> [The defendants' counsel:] Do you have a history of depression?
>
> [Marker:] Years ago, . . . Dr. Tooke started me on it because he knew I was going through a lot of stuff. . . .

Doc. No. 38-3, p. 8. The current facts are much more analogous to *Leithead* than *Worley* or *Kanzler*. The Court finds that emotional distress was present, but not of the severe variety that would allow the question to reach the fact finder. Accordingly, the Court grants summary judgment on the claim for intentional infliction of emotional distress.

### III. Marker has no private right to enforce the Wyoming Worker's Compensation Act, and this Court does not possess jurisdiction to rule on compensability. But a disputed issue of material facts exists on Count IV because the court construes this count as a claim for breach of contract.

*No private statutory right exists and this Court cannot revisit compensability.*

In the *Complaint*, Marker's Count IV alleges a claim for failure to protect her under workers' compensation insurance. The defendants contend that coverage was optional and that no private right exists for the Marker. The Court finds that no right exists for a private citizen to bring a cause of action against an employer for not having coverage under workers' compensation insurance. *See Herrig v. Herrig*, 844 P.2d 487, 493–494 (Wyo. 1992) (finding that no private right existed under the Wyoming Insurance Code and recognizing that "the Wyoming Legislature knows how to expressly create a private right of action if it chooses to do so."); *see also* WYO. STAT. ANN. §§ 27-14-101 through 27-14-806 (2015) (no express provision providing an employee a private right of action to sue an employer when that employer declines optional coverage). Marker did not cite any language in the Act suggesting a private right of action exists under these facts, and the Court could not find any such authority. The enforcement right rests with the Division; not Marker.

Even if there were a right to sue an employer for statutory failure to cover, this Court does not have jurisdiction. In Wyoming, coverage under the workers' compensation insurance program is mandatory for some employers and optional for others. *See* WYO. STAT. ANN. § 24-14-108(a)–(g) (listing extrahazardous areas of employment, all of which must be covered by workers' compensation insurance); WYO. STAT. ANN. § 24-14-108(j) (allowing employers of employees doing work that is not extrahazardous the option to enroll in workers' compensation

insurance). The determination of whether work is extrahazardous depends upon the nature of the employer's business; not whether a specific employee engages in hazardous work from time to time. *See Gonzales v. Grass Valley Mobile Park*, 933 P.2d 484, 487 (Wyo. 1997) *overruled in part on other grounds in Torres v. State ex rel., Wyoming Workers' Safety and Compensation Div.*, 2004 WY 92, ¶ 7, 95 P.3d 794, 796 (Wyo. 2004). The determination of hazardousness is made by the Division. *See id.*

A determination of hazardousness comes before the Division one of two ways. The first way is when an employer provides information to the Division before beginning business operations in Wyoming. WYO. RULES & REGULATIONS, RULES, REGULATIONS AND FEE SCHEDULES OF THE WYOMING WORKERS' SAFETY AND COMPENSATION DIV., Ch. 2, § 4. (2015) (authorizing the Division to classify a business as extrahazardous after receiving information from the employer). The second way is when the Division receives a Report of Injury. *Id.* Ch. 5, § 1. The Division reviews the matter and subsequently makes a final determination on compensability. *Id.* § 2. Any affected party has fifteen days after the mailing of the final determination to object and request a contested case hearing. *Id.*

Jackson Hewitt voluntarily declined its optional coverage in 2011. Doc. No. 38-2, p. 25. Jackson Hewitt submitted the Report of Injury to the Division for Marker on January 23, 2013, three days after Marker's accident. Doc. No. 38-2, pp. 19–20. By February 1, 2013, the Division notified Oteiza that Marker was not covered by workers' compensation insurance. Doc. No. 38-2, p. 25. When the Division mailed that notice to Marker, the fifteen days started counting down. At that point, Marker's only legal option with regard to compensability was to object and ask for a contested case hearing in front of the Office of Administrative Hearings. Marker cites no authority granting administrative appeal from a Wyoming agency directly to this Court. The

15

determination of compensability was made by the Division, and this Court does not possess jurisdiction to weigh in on whether Jackson Hewitt was statutorily obligated to cover Marker. But this is not the end of the analysis on Count IV.

*Marker presents an actionable claim for breach of contract.*

From the beginning of this case, the Court has questioned the identity of Count IV. The defendants suggest that it is just a duplicative count for promissory estoppel. After reading and rereading Count IV, the Court is convinced it is really a claim for breach of contract. Therefore—in the interests of fairness and justice—the Court will construe Count IV as a claim for breach of oral contract and test it under the standard for summary judgment.

Breach of contract involves three elements: a lawfully enforceable contract, an unjustified failure to timely perform any part or all of what is promised, and the injured party's entitlement to damages. *Reynolds v. Tice*, 595 P.2d 1318, 1323 (Wyo.1979). Marker claims that multiple people working for Jackson Hewitt represented to her that she was covered by workers' compensation, Jackson Hewitt was allegedly obligated to provide workers' compensation insurance and did not do so, and Marker was injured thereby. *Complaint*, ¶¶ 59–67. This is a claim for breach of contract, and the Court must next analyze summary judgment based on the evidence viewed in a light most favorable to Marker.

First, a disputed issue of material fact exists as to whether a lawfully enforceable contract exists. A binding contract requires offer, acceptance, and exchange of consideration. *Birt v. Wells Fargo Home Mortgage, Inc.*, 2003 WY 102, ¶ 10, 75 P.3d 640, 647 (Wyo. 2003). Marker stated in her deposition that Jackson Hewitt promised she would be covered by workers' compensation. Doc. No. 38-3, p. 5. Corbett stated that Jackson Hewitt "absolutely" provided all its employees with workers' compensation. Doc. No. 41, pp. 136–37. A reasonable juror could find she

accepted this promise in her discussions with Jackson Hewitt and through continued employment with Jackson Hewitt. Jackson Hewitt promised to provide coverage, and she continued to work for Jackson Hewitt, so a reasonable juror could find that consideration was exchanged. Viewing the facts in a light most favorable to Marker, a disputed issue of material fact exists as to whether there was binding contract.[2]

Second, a disputed issue of material fact exists as to whether a breach occurred. The defendants provided evidence showing they tried to perform their side of the bargain. Doc. No. 38-2. Marker provided evidence indicating the defendants did not perform. Doc. No. 38-3, p. 5. Third, a disputed issue of material fact exists as to whether the alleged breach caused the damages alleged. The defendants argue that causation and the amount of damages are not in dispute. Marker demonstrated that this alleged breach could have caused her requested damages. Doc. No. 41, pp. 49–76. This is enough to proceed to trial.

Jackson Hewitt declined workers' compensation insurance and is not immune to actions in tort or contract. *See* WYO. STAT. ANN. § 27-14-104(c) ("This act does not limit or affect any right or action by any employee . . . against an employer for injuries received while employed by the employer when the employer at the time of the injuries has not qualified under this act for coverage of his [or her] eligible employees, . . ."); *see also id.* § 27-14-101(b) (stating that "[t]he worker's benefit system in Wyoming is based on a mutual renunciation of common law rights and defenses by employers and employees alike."). Because Marker's count for failure to protect

---

[2] The Court notes that this oral contract is not barred by the statute of frauds, because the contract is of indefinite duration and could conceptually be performed within one year. *See Metz Beverage Co. v. Wyoming Beverages, Inc.*, 2002 WY 21, ¶ 18, 39 P.3d 1051, 1057 (Wyo. 2002). *See also* WYO. STAT. ANN. § 1-23-105(i).

under workers' compensation is actually a count for breach of contract in disguise and because disputes of material fact exist as to the breach of contract claim, Count IV survives for trial as breach of contract.

### IV. The defendants are entitled to summary judgment on Marker's request for punitive damages because the damages only attach to a count that is being dismissed.

The defendants argue that no dispute of material fact exists as to the issue of punitive damages because their conduct does not reach the level of "willful or wanton" as a matter of law. Marker contends that this issue is a question of fact and must be left to the fact-finder. First, the Court must look to the *Complaint* to see which claim or claims involve punitive damages.

Marker does not mention punitive damages in her claims for failure to provide a safe work place, promissory estoppel, or failure to protect under workers' compensation. She specifically claims punitive damages in her claim for intentional infliction of emotional distress. *Complaint*, ¶ 57. She also lists general allegations related to punitive damages in paragraphs 68 through 74 of the *Complaint*. These general allegations only describe the conduct of the defendants involved in Marker's claims for intentional infliction of emotional distress.

Claims for punitive damages are not causes of action, but elements of causes of action. *Errington v. Zolessi*, 9 P.3d 966, 969 (Wyo. 2000). Punitive damages live and die with the interrelated cause of action during a motion for summary judgment. *Id.* Because the punitive damages allegation only relates to one of the counts being dismissed, Count III, this Court grants summary judgment on the interrelated element of punitive damages in Count III.

### CONCLUSION

The Court finds that (1) no dispute of material fact exists as to Marker's claim for promissory estoppel; (2) no dispute of material fact exists as to Marker's claim for intentional

infliction of emotional distress; and (3) the request for punitive damages is dismissed. Summary judgment is granted as to Count II for promissory estoppel, Count III for intentional infliction of emotional distress, and the interrelated element of punitive damages.

The issues remaining for trial are: (i) Marker's cause of action for failure to provide a safe workplace; and (ii) Marker's cause of action for breach of contract that is present in Count IV. For the foregoing reasons, it is hereby

**ORDERED** that Defendants' *Motion for Partial Summary Judgment* (Doc. No. 37) shall be, and is, **GRANTED IN PART, DENIED IN PART** as detailed above.

The parties shall be prepared to proceed to trial as presently scheduled for November 16, 2015.

Dated this 15th day of October, 2015.

_____
Alan B. Johnson
United States District Judge